# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles Norgle | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 0264 | **DATE** | 8/27/2003 |
| **CASE TITLE** | Weathersby vs. Union Pacific Railroad Co. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant's Motion to Dismiss Count IV of Plaintiff's Second Amended Complaint

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Before the court is Defendant's Motion to Dismiss Count IV of Plaintiff's Second Amended Complaint [29-1]. For the reasons stated on the attached order, Defendant's motion [29-1] is granted. Count IV of Plaintiff's Second Amended Complaint is dismissed. It is so ordered.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | AUG 28 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✔ | Docketing to mail notices. | | | 35 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice / mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARK D. WEATHERSBY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 01 C 0264 |
| v. ) | |
| ) | Honorable Charles R. Norgle |
| UNION PACIFIC RAILROAD COMPANY, ) | |
| ) | |
| Defendant. ) | AUG 2 6 2003 |

**OPINION AND ORDER**

CHARLES R. NORGLE, District Judge.

Before the court is Defendant Union Pacific Railroad Company's Motion to Dismiss Count IV of Plaintiff's Second Amended Complaint brought pursuant to Federal Rule of Civil Procedure 12(b)(1). For the following reasons, Defendant's motion is granted.

**I. INTRODUCTION[1]**

On April 1, 1997, Union Pacific Railroad Company ("Union Pacific") hired Plaintiff Mark D. Weathersby, an African-American male, as a trackman to work at the train yard in Dolton, Illinois. In June of 1999, Weathersby completed training and met all requirements needed to become a machine operator. In September of 1999, Weathersby made several bids on machine operator vacancies, all of which were denied. In each case, Union Pacific filled the machine operator

---

[1]The facts presented in this opinion are based on the allegations in Plaintiff's Second Amended Complaint and do not represent established fact. See Martin v. Shalala, 63 F.3d 497, 501 (7th Cir.1995) (providing that the court must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff when ruling on a Rule 12(b)(1) motion) (citations omitted).

1

positions with non-minority applicants--all with less seniority and qualifications than Weathersby. Several months later, Weathersby filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging racial employment discrimination for Union Pacific's failure to appoint minority applicants to the machine operator positions.

On November 10, 1999, Weathersby injured his right hand when he slipped on a truck bumper and fell while working in the train yard. On June 6, 2000, Weathersby injured his lower back while using a rail stretcher. Weathersby's lower back injury was further aggravated when he rode in a company truck containing inadequate shock absorbers. On June 7, 2000, Weathersby reported the June 6, 2000 injury to Union Pacific by submitting the required form.

On June 15, 2000, Union Pacific ordered Weathersby to complete another personal injury report for the June 6, 2000 incident. Weathersby executed his second personal injury report and submitted it to Union Pacific on the following day.

On June 16, 2000, Union Pacific withheld Weathersby from service pending an investigation on whether Weathersby properly reported his June 6, 2000 injury and followed instructions given on June 15, 2000. On October 2, 2000, Union Pacific terminated Weathersby's employment as a result of the investigation's findings.

On October 17, 2000, Weatherby received a "Notice of Right to Sue" from the EEOC.

On January 12, 2001, Weathersby filed this lawsuit against his former employer, Union Pacific. On February 27, 2003, after two years of litigation, Weathersby filed his Second Amended Complaint containing four counts. Counts I and II are brought pursuant to the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 56, alleging negligence in connection with Weathersby's November 10, 1999 and June 6, 2000 injuries, respectively. Count III is brought pursuant to Title

VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.* ("Title VII"), alleging racial employment discrimination. Count IV is a state-law wrongful discharge claim alleging that Union Pacific wrongfully terminated Weathersby to avoid reporting Weathersby's November 10, 1999 and June 6, 2000 injuries to the Federal Railroad Administration ("FRA").

On March 27, 2003, Union Pacific filed its Motion to Dismiss Count IV of Weathersby's Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1). Union Pacific's motion is fully briefed and before the court.

## II. DISCUSSION

### A. Motions to Dismiss for Lack of Subject Matter Jurisdiction

When reviewing a motion to dismiss, the court merely looks at the sufficiency of the complaint, Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 (2002); Autry v. Northwest Prem. Servs., Inc., 144 F.3d 1037, 1039 (7th Cir. 1998); it does not decide whether the plaintiff has a winning claim. Herdich v. Pegram, M.D., 154 F.3d 362, 369 (7th Cir. 1998). For the purposes of a motion to dismiss for lack of subject matter jurisdiction, the court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. Martin v. Shalala, 63 F.3d 497, 501 (7th Cir.1995) (citing Rueth v. United States Environmental Protection Agency, 13 F.3d 227, 227 (7th Cir.1993)).

Rule 12(b)(1) provides for the dismissal of claims over which the federal court lacks subject matter jurisdiction. See Fed. R. Civ. P. 12(b)(1). "Fundamental to our law is the understanding that '[f]ederal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto.'" Transit Express, Inc. v. Ettinger, 246 F.3d 1018, 1023 (7th Cir. 2001) (quoting Bender v. Williamsport Area

School Dist., 475 U.S. 534, 541 (1986)); see also Allen v. Wright, 468 U.S. 737, 750 (1984). Under Rule 12(b)(1), the plaintiff bears the burden of establishing that it has satisfied the jurisdictional requirements of the court. Kontos v. United States Dept. of Labor, 826 F.2d 573, 576 (7th Cir. 1987). To determine whether subject matter jurisdiction exists, the court may look beyond the complaint and view any extraneous evidence submitted by the parties. See United Transp. Union v. Gateway Western Ry. Co., 78 F.3d 1208, 1210 (7th Cir. 1996) (citing Bowyer v. United States Dep't of Air Force, 875 F.2d 632, 635 (7th Cir. 1989)). With these principles in mind, the court examines Union Pacific's motion.

Union Pacific claims that this court lacks subject matter jurisdiction over count IV of Weathersby's Second Amended Complaint. Specifically, Union Pacific asserts that the Railway Labor Act, 45 U.S.C. § 151a *et seq.* ("RLA"), preempts Weathersby's state-law wrongful discharge claim--thus prohibiting this court from adjudicating the issue of wrongful termination under Illinois law. The court will now determine whether Weathersby's wrongful discharge claim is preempted by the RLA.

## B. Preemption under the RLA

The RLA governs the relationship between air or rail carrier employers and their union employees. Westbrook v. Sky Chefs, Inc., 35 F.3d 316, 317 (7th Cir. 1994). Congress enacted the RLA "to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes." Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 252 (1994). To accomplish these objectives, the RLA contains a mandatory arbitral mechanism with two classes of disputes--major and minor. Id. Major disputes are disputes that relate to "the formation of collective [bargaining] agreements or efforts to secure them." Id. (quoting Consolidated Rail Corp. v. Railway

4

Labor Executives' Ass'n, 491 U.S. 299, 302 (1989)). Included in this class of disputes are issues such as "rates of pay, rules or working conditions. . . ." Hawaiian Airlines, 512 U.S. at 252. Conversely, minor disputes are disputes that grow out of grievances or the interpretation or application of agreements covering issues such as "rates of pay, rules, or working conditions." Id. at 252-53. In short, major disputes seek to create contractual rights, while minor disputes seek to enforce them. Id.; Monroe v. Missouri Pacific R. Co., 115 F.3d 514, 516 (7th Cir. 1997).

A significant difference between major and minor disputes is that major disputes can be immediately litigated in federal court, while minor disputes must be adjudicated under RLA arbitral mechanisms. Monroe, 115 F.3d at 516. A claim is a major dispute if it involves rights and obligations that exist independent of the Collective Bargaining Agreement ("CBA"). Hawaiian Airlines, 512 U.S. at 258-60; Monroe, 115 F.3d at 517. "[A] state law claim is independent of a CBA for preemption purposes as long as the state-law claim can be resolved without interpreting the agreement itself." Monroe, 115 F.3d at 517 (internal quotations and citations omitted). Thus, major disputes--those in which the CBA does not provide the "only source" of the plaintiff's rights--are not preempted by the RLA. Id.

Minor disputes, on the other hand, cannot initially be brought in federal court. In cases in which the employer is a railroad, the National Railroad Adjustment Board ("NRAB") has exclusive jurisdiction over minor disputes. See Kelley v. Norfolk & So. R. Co., 80 F.Supp.2d 587, 593 (S.D.W.V. 1999). Minor disputes must be adjudicated under RLA arbitral mechanisms which include "an employer's internal dispute-resolution procedures and an adjustment board established by the unions and the employer." Monroe, 115 F.3d at 516. If a court deems a dispute minor--that

5

is one that requires an interpretation of a CBA--then it is preempted by the RLA and the district court lacks subject matter jurisdiction over the claim. Monroe, 115 F.3d at 516.

In this case, Weathersby asserts that his wrongful discharge claim is not preempted by the RLA because it does not require an interpretation of the CBA, but rather a factual determination of whether Union Pacific retaliated against him to avoid paying damages on his FELA claim. See Pl.'s Resp. to Def.'s Mot. to Dismiss, at 4-5. Weathersby cites Hawaiian Airlines in support of his position. 512 U.S. at 252 (holding that the CBA need not be consulted to determine the propriety of a discharge). Weathersby contends he will only present facts showing that he was injured at work, filed an injury claim, and was subsequently fired in violation of Illinois tort law. See Pl.'s Resp. to Def.'s Mot. to Dismiss, at 4- 5. In other words, Weathersby claims his wrongful discharge claim is completely independent of the CBA, and therefore it is not preempted by the RLA.

The Seventh Circuit confronted a similar situation in which the plaintiff brought a wrongful discharge claim against his railroad employer in conjunction with a FELA claim. See Monroe, 115 F.3d at 514-21. In Monroe, the plaintiff took a medical leave of absence after getting injured at work. Id. at 515. While Monroe was on medical leave, his employer hired a private investigator to conduct surveillance of his activities. Id. The private investigator obtained evidence of Monroe installing satellite television systems. Id. Shortly thereafter, the employer railroad commenced a CBA hearing regarding the propriety of Monroe's conduct and subsequently terminated his employment. Id. The Monroe court held that Monroe's state-law wrongful discharge claim was not independent of the CBA because it required an "interpretation of the CBA in order to determine the validity of his arguments regarding the Railroad's retaliatory intent." Monroe, 115 F.3d at 518. The Monroe court reasoned that when analyzing a claim of "pretextual discharge," the court may be

required to apply and interpret standards which are implied terms of the CBA. Id. The Monroe court also stated that because Monroe questioned the propriety of his disciplinary hearing conducted pursuant to the CBA, the court's interpretation of that agreement was necessary. Id. The Monroe court further reasoned that because Monroe's claims involved past and future wages, benefits and promotions--all of which are determined by the CBA--an application or interpretation of the CBA was likely. Id.

The court finds that Weathersby's Second Amended Complaint raises issues similar to those raised in Monroe. Count IV of Weathersby's Second Amended Complaint asserts that Union Pacific's stated reasons for terminating Weathersby--Weathersby's failure to properly report his June 6, 2000 injury and to follow instructions given on June 15, 2000--are a pretext to Weathersby's wrongful discharge in violation of Illinois' public policy and Union Pacific's own policies and practices. See Second Am. Compl. ¶ 45. Although Weathersby does not directly refer to the CBA, it is obvious that this determination will involve a review of standards and procedures which are set forth, either explicitly or implicitly, in the CBA. To determine whether Union Pacific's actions were justified, the court must decide whether Union Pacific properly followed its disciplinary procedures and held a proper investigation prior to Weathersby's dismissal. See Monroe, 115 F.3d at 517. These procedures are governed by the CBA. Because the court must determine whether Union Pacific was within its rights under the CBA when it fired Weathersby, some interpretation of the CBA is necessary to resolve this issue. See id.; see also Fry v. Airline Pilots Ass'n, Intern., 88 F.3d 831, 836-37 (10th Cir. 1996) (holding that airline pilots' state law claims could not be properly evaluated without reference to the CBA).

7

Additionally, Count III of Weathersby's Second Amended Complaint, the Title VII claim, alleges that Union Pacific has a "promotional and seniority system which has the effect of continuing and preserving [Union Pacific's] policy, practice, custom and usage of limiting the employment and promotional opportunities of [Weathersby], because of his race and color." See Second Am. Compl. ¶ 36. Weathersby's Second Amended Complaint also seeks damages for lost wages and benefits. See id. ¶ 49. Such claims support a finding that Weathersby's wrongful discharge claim is preempted by the RLA. See Monroe 115 F.3d at 518 (claims involving past wages, benefits and promotions--which are determined under the CBA--will likely involve an interpretation of the CBA).

Lastly, the Monroe court emphasized that Hawaiian Airlines does not allow a litigant to litigate his labor-related claims under FELA and that the courts cannot allow a plaintiff "to 'artfully plead' himself around the preemptive effect of the RLA by framing his CBA claims as wrongful discharge causes of action under FELA and Illinois public policy." Monroe, 115 F.3d at 519 (quoting Hammond v. Terminal R.R. Ass'n, 848 F.2d 95, 97 (7th Cir. 1988)). The court concludes that this is exactly what count IV of Weathersby's Second Amended Complaint seeks to do--to litigate the propriety of his termination under FELA and Illinois public policy.

As a result, the court finds that Count IV of Weathersby's Second Amended Complaint requires an interpretation of the CBA and is preempted by the RLA. Therefore, this court lacks jurisdiction over Weathersby's wrongful discharge claim. See Monroe, 115 F.3d at 518-19.

## III. CONCLUSION

For the foregoing reasons, Union Pacific's Motion to Dismiss Count IV of Plaintiff's Second Amended Complaint brought pursuant to Federal Rule of Civil Procedure 12(b)(1) is granted.

IT IS SO ORDERED.

ENTER:

*[signature: Charles R Norgle]*

CHARLES RONALD NORGLE, Judge
United States District Court

DATED: 8-27-03